UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TOIYA HILLS, FREDRICKA WASHINGTON, and
RUPA DHAKAL individually and on behalf of all others
similarly situated,  1:18-cv-01240 (BKS/CFH)

                                               Plaintiffs,

v.

MICHAEL P. HEIN, as Commissioner of the New York
State Office of Temporary and Disability Assistance,

                                               Defendant.
_____

**Appearances:**

*For Plaintiffs:*
Susan C. Antos
Saima A. Akhtar
Empire Justice Center
119 Washington Avenue
Albany, NY 12210

*For Defendant:*
Letitia James
Attorney General
Kyle W. Sturgess
Helena Lynch
Assistant Attorney Generals
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

MEMORANDUM-DECISION AND ORDER

I.      INTRODUCTION

      Plaintiffs Toiya Hills, Fredricka Washington, and Rupa Dhakal filed this putative class

action against Defendant Michael P. Hein, the Commissioner for the New York State Office of

Temporary and Disability Assistance ("OTDA"), on behalf of themselves and on behalf of all others similarly situated. (Dkt. No. 1). Plaintiffs bring this action under 42 U.S.C. § 1983, alleging that Defendant violated their Fourteenth Amendment procedural due process rights by, inter alia, failing to provide adequate written notice of denial of benefits and failing to ensure the OTDA complied with administrative determinations that Plaintiffs were entitled to benefits under New York's State Supplement Program ("SSP"). (*Id.*). Plaintiffs seek declaratory and injunctive relief. (Dkt. No. 1, at 19–21). Defendant moves to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 8). Plaintiffs oppose Defendant's motion. (Dkt. No. 14). For the reasons that follow, Defendant's motion is denied.

## II. FACTS[1]

### A. Supplemental Security Income and the State Supplement Program

The Social Security Administration ("SSA") provides Supplemental Security Income ("SSI") to indigent blind, aged, or disabled individuals. 42 U.S.C. § 1381. The Social Security Act allows states "to supplement the federal SSI payment with a regular monthly cash payment derived from state funds." (Dkt. No. 1, ¶ 21 (citing 42 U.S.C. § 1382e); *see also* 18 N.Y.C.R.R. § 398-1.1 (explaining that under the Social Security Act, "[s]tates also have the option to provide additional payments to supplement the basic Federal SSI payment."). "New York State chose to establish such an optional program of additional State payments"; one category of such benefits is the SSP benefit. 18 N.Y.C.R.R. § 398-1.1. In 2018, the SSP benefit was "$87 per month for individuals living alone and $23 per month for persons living with others." (Dkt. No. 1, ¶ 22 (citing N.Y. Soc. Serv. Law § 209(2)(a), (b))).

---

[1] All facts are taken from the Complaint and its exhibits, (Dkt. No. 1), and are assumed to be true for purposes of the parties' motions. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

Until October 1, 2014, the SSA administered New York's SSP program and the New York SSP benefit "was included as one payment issued by SSA with the federal SSI payment."[2] (Dkt. No. 1, ¶ 24; Dkt. No. 1-1). After that date, with limited exceptions, New York's OTDA "took over administration of the SSP program." (Dkt. No. 1, ¶ 24; Dkt. No. 1-1).

"Individuals or couples residing in New York State who apply to the SSA for federal SSI benefits are deemed to have concurrently filed for SSP benefits." 18 N.Y.C.R.R. § 398-4.1(a). There is no separate application for SSP benefits. *Id.* "SSP benefits are payable as of the month that SSI payments begin." 18 N.Y.C.R.R. § 398-4.1(d). Subject to certain income requirements, if the SSA finds an individual disabled and entitled to SSI benefits, that individual is eligible to SSP benefits. *Id.*; 18 N.Y.C.R.R. § 398-4.4 (b), (c). There is no separate determination of disability by the SSP Agency. *See* 18 N.Y.C.R.R. § 398-4.3 ("The [SSP Agency] is bound by the decision and action taken by SSA on the SSI eligibility determination.").

The SSA also provides Social Security Disability Insurance ("SSD") benefits to disabled individuals who have made payments into the Social Security system. *See* 42 U.S.C. § 423(a), (c) (outlining "[d]isability insurance benefits" and defining "insured status"). While individuals who are determined to be disabled and eligible for SSI benefits are entitled to benefits immediately, individuals entitled to SSD benefits are subject to a five-month waiting period. 42 U.S.C. § 423(a)(1), (c)(2); 20 C.F.R. § 404.315(a)(4).

An individual applying for or receiving SSP benefits "has the right to request an administrative fair hearing to appeal an action" of the OTDA. 18 N.Y.C.R.R. § 398-10.1; N.Y. Soc. Serv. Law § 22. Fair hearings regarding SSP benefits are governed by 18 N.Y.C.R.R. § 358-

---

[2] "For an administrative fee, the federal government will distribute the [SSP benefit] in combination with the federal SSI payment, or states can administer issuance of the supplement themselves and provide a separate payment." (Dkt. No. 1, ¶ 23 (citing 42 U.S.C. § 1382e(a) ("State may enter into an agreement . . . under which the Commissioner of Social Security will, on behalf of such State . . . make such supplementary payments to all such individuals.")))).

5.0 to 5.13. *See* 18 N.Y.C.R.R. § 398-10.3. ("All provisions of Part 358 of this Title . . . shall apply to hearings conducted under this part."). All fair hearing decisions by the OTDA Commissioner are "final and binding" on the SSP. 18 N.Y.C.R.R. § 358-6.1(b). An individual "entitled to a benefit pursuant to a decision of the commissioner . . . shall be advised to contact" the OTDA "in the event that [the SSP] does not comply with such decision." N.Y. Soc. Serv. Law § 22. "Upon receipt of a complaint that [the SSP] has not complied with the fair hearing decision, the commissioner [of the OTDA] . . . will secure compliance by whatever means is deemed necessary and appropriate under the circumstances of the case." 18 N.Y.C.R.R. § 358-6.4(c). New York Social Services Law § 22 further provides that "[a]ny aggrieved party to an appeal . . . may apply for review" in state court pursuant to Article 78 of the New York Civil Practice Law and Rules. N.Y. Soc. Serv. Law § 22(9)(b).

### B. Individual Plaintiffs

#### 1. Toiya Hills

On January 20, 2015, Plaintiff Hills applied to the SSA for SSI and SSD benefits. (Dkt. No. 1, ¶ 35). In a letter dated September 15, 2017, the SSA advised Hills that her SSI application had been approved and that she had been deemed eligible for SSI as of February 2015. (*Id.* ¶ 36). Hills received a "separate notice" informing her that "she was eligible for [SSD] benefits in the amount of $1233.00 per month" and would receive those benefits after the five-month waiting period "beginning July 2015." (Dkt. No. 1, ¶ 36).

Hills claims that she should have received SSP payments of $87 per month from the State from February to July 2015 "[b]ecause she was SSI eligible," "living alone," and had not yet been deemed eligible for SSD, thus, her "countable monthly income" did not "exceed[] the maximum benefit" for her "living arrangement" at that point. (*Id.* ¶¶ 37–38). In a notice dated September 11, 2017, however, the SSP informed Hills that they "had determined that [she was]

4

not eligible for" SSP benefits because her "total SSP countable monthly income [of $1213.00] exceeds the maximum benefit amount for [her] living arrangement,"[3] (Dkt. No. 1-2, at 2), and that the decision was "based on Regulations at 18 NYCRR Part 398.4.2(a)." (Dkt. No. 1-2, at 3). "The notice did not indicate the time period that the denial covered." (Dkt. No. 1, ¶ 38).

Hills requested, and on May 10, 2018 received, "a fair hearing" before an Administrative Law Judge "to challenge the denial of SSP benefits for the five-month period." (Dkt. No. 1, ¶ 39). In a "fair hearing decision" entered on May 30, 2018, the OTDA "Commissioner's Designee"[4] found that the SSP's "determination not to provide [Hills] with retroactive [SSP] benefits for February 2015 to June 2015 was not correct" and reversed the determination. (Dkt. No. 1, ¶ 40; Dkt. No. 1-3, at 10). The Commissioner's Designee directed the SSP "to re-evaluate [Hills'] eligibility for SSP benefits for February 2015 to June 2015" and "to provide [Hills] with a written notice of its determination." (Dkt. No. 1-3, at 10). Finally, the Commissioner's Designee noted that 18 N.Y.C.R.R. § 358-6.4 required the SSP to "comply immediately with the directives set forth above." (Dkt. No. 1-3, at 10). The fair hearing decision's cover sheet advised Hills to notify the OTDA if the SSP "fails to comply with the decision within 10 days." (Dkt. No. 1-3, at 2).

On June 13, 2018, fourteen days after the fair hearing decision was issued, "counsel for Ms. Hills contacted the Compliance Unit by telephone . . . to complain that no action had been taken on the favorable fair hearing decision." (Dkt. No. 1, ¶ 42). In a letter dated June 14, 2018, a "Compliance Coordinator" for the OTDA responded:

---

[3] In making this determination, the SSP included in its monthly calculation, the $733 Hills was to receive in SSD benefits; Hills, however did not receive SSD benefits during the five-month waiting period—February to July 2015. (Dkt. No. 1, ¶ 20; Dkt. No. 1-2, at 2).

[4] The decision was entered by Thelma Lee, as the "Commissioner's Designee." (Dkt. No. 1-3, at 10).

5

> This letter is to acknowledge receipt of your complaint of non-compliance concerning the above referenced fair hearing decision.
>
> We will review this matter with your local agency to insure that appropriate action is taken. Please allow approximately 30 days for us to complete this review. After that, if you have any questions regarding your case, please contact this office . . . .
>
> This office will contact you by letter when we are satisfied that your local agency has complied with the fair hearing decision.

(Dkt. No. 1-4, at 2).

In a letter dated September 21, 2018, regarding the May 10, 2018 fair hearing decision, the OTDA notified Hills as follows:

> The decision on that fair hearing directed SSP to re-evaluate your eligibility for retroactive SSP benefits for February 2015-June 2015.
>
> Upon further investigation, SSP found that you have not been an active participant in the SSP program. Consequently, SSP cannot issue you retroactive benefits.

(Dkt. No. 1-5, at 2). The letter does not cite "any statutory or regulatory basis for its determination, and fails to advise Ms. Hills whether she has any further right to review." (Dkt. No. 1, ¶ 44). Hills "has received no communication from the Defendant's Fair Hearing Compliance Unit as to whether it had made a determination that the September 21, 2018 letter from the SSP Unit constituted compliance with the fair hearing decision." (Dkt. No. 1, ¶ 45).

### 2. Fredricka Washington

On July 15, 2015, Plaintiff Washington applied to the Social Security Administration for SSI and SSD benefits. (Dkt. No. 1, ¶ 47). In a letter dated June 13, 2017, the SSA advised Washington that her application had been approved and that she had been found eligible for SSI benefits as of December 2015. (*Id.* ¶ 48). Washington received a separate notice from the SSA that advised that she had been approved for SSD benefits in the amount of $937 per month, beginning May 2016. (*Id.* ¶ 48).

6

According to the Complaint, because Washington was SSI eligible beginning December 2015, but not SSD eligible until May 2016, and lived alone, she "should have received [SSP benefit] payments in the amount of $87 per month" during that five-month time period. (*Id.* ¶ 49). In a notice dated June 7, 2017, however, the SSP informed Washington that they "had determined that [she was] not eligible for" SSP benefits because her "total SSP countable monthly income [of $1213.00] exceeds the maximum benefit amount for [her] living arrangement,"[5] (Dkt. No. 1-6, at 2), and that their decision was "based on Regulations at 18 NYCRR Part 398.4.2(a)." (Dkt. No. 1-6, at 3). "The notice did not indicate the time period to which the determination applied." (Dkt. No. 1, ¶ 50).

Washington requested, and on August 11, 2017, received "a fair hearing to challenge the denial of SSP benefits for the five month period." (Dkt. No. 1, ¶ 51). In a decision dated October 19, 2017, the Commissioner's Designee found that the SSP's "determination that [Washington] was ineligible for retroactive [SSP] benefits for the period December 1, 2015 to April 30, 2016 may have been correct when made, but in view of the facts presented at the hearing cannot be sustained." (Dkt. No. 1-7, at 10). Accordingly, the Commissioner's Designee directed the SSP "to evaluate [Washington's] eligibility for SSP benefits for the period December 2015 to April 2016 considering the subsequent SSA determination that [Washington] was eligible for SSI for these months, provide her with any assistance owed in accordance with the verified degree of need" and "to notify [Washington] in writing of its determination." (Dkt. No. 1-7, at 10). Finally, Commissioners Designee noted that 18 N.Y.C.R.R. § 358-6.4 required the SSP to "comply immediately with the directives set forth above." (Dkt. No. 1-7, at 10). The fair hearing decision

---

[5] Again, the SSP included the amount Washington would eventually receive in SSD benefits in calculating her monthly income, even though she did not receive that amount until May 2016. (Dkt. No. 1, ¶ 49).

cover sheet advises: "If you do not feel that the [SSP] has taken the action which the decision tells it to take within 10 days after you receive this decision, you may fill out the attached form and send it" to the OTDA. (Dkt. No. 1-7, at 2).

On November 28, 2017, more than five weeks after the issuance of the fair hearing decision, a paralegal from Plaintiff's counsel's office "contacted the Compliance Unit by telephone . . . to complaint that no action had been taken on the favorable fair hearing decision." (Dkt. No. 1, ¶ 55). In a letter dated November 29, 2017, an OTDA "Compliance Coordinator" acknowledged "receipt of your complaint of non-compliance regarding the . . . fair hearing decision" and indicated that the OTDA would "review this matter" with the SSP "to insure that appropriate action is taken" and that Washington would "be contacted by this Office upon completion of compliance." (Dkt. No. 1-8, at 2). In a letter dated March 15, 2018, concerning the fair hearing decision, the "SSP Fair Hearings Unit" wrote:

> After careful review of this issue and the specific circumstances of your case, it has been determined that due to New York State's SSP regulations, we are unable to issue you retroactive SSP benefits.
>
> This decision is based on SSP regulations discussed below.
>
> Pursuant to 18 NYCRR 398-4.2(a)(2) in order to be eligible for SSP benefits, an individual or couple must be in receipt of federal [SSI] benefits or be eligible to receive SSI benefits except for reason of income. Pursuant to section 398-4.3 the Office shall determine each individual's . . . initial eligibility for SSP benefits on the basis of the date supplied by the [Social Security Administration] to the State via the State Data Exchange (SDX). Section 398-11.3 provides that when any payment issued is less than the correct amount of SSP . . . benefits, the Office will correct the underpayment to the individual or couple, except that no payment will be made to an individual . . . who is ineligible to receive SSP . . . .
>
> Our review of your circumstances indicates that you never had an SSP case as administered by New York State, and are not presently eligible for either SSI or SSP benefits. Consequently, SSP cannot

8

issue you retroactive SSP benefits for the period of December 2015 to April 2016.

(Dkt. No. 1-9, at 2).

In a letter to Washington dated March 28, 2018, a Compliance Coordinator wrote that that the OTDA had "receive a report from the [SSP] regarding compliance with the . . . fair hearing decision and your original complaint confirms that the [SSP] has taken appropriate action to comply with the directives of the Decision After Fair Hearing." (Dkt. No. 1-10, at 2). The coordinator indicated that the OTDA regarded "this matter as satisfactorily resolved" and that the OTDA had closed Washington's "compliance inquiry." (Dkt. No. 1-10, at 2). The coordinator further advised that if Washington had "any questions or would like to discuss this case further, please contact our Office at 1 (800) 342-3334." (Dkt. No. 1-10, at 2).

### 3. Rupa Dhakal

On November 9, 2016, the Social Security Administration advised Plaintiff Dhakal that she was eligible for SSI benefits for the period of November 2013 to August 2016. (Dkt. No. 1, ¶ 60). Because of her "refugee" status, Dhakal "was no longer eligible for SSI benefits as of September 2016." (Dkt. No. 1, ¶ 60). On May 23, 2017, Dhakal's attorney emailed the SSP and requested that the SSP provide Dhakal "benefits for the months in which she had been awarded SSI."[6] (*Id.* ¶ 61). In an email dated May 24, 2017, the SSP replied that "[a]fter a careful review

---

[6] Specifically, the email stated:

> I attached the Notice of Award for Ms. Dhakal. She actually was eligible for several years of retroactive benefits. However, her eligibility ended right after her hearing. Please calculate her retro SSP. I know the system said not eligible but is there a way to confirm for other claimants as well that there was a period of eligibility when they should have received SSP as well? We have a lot of clients who wait years for a favorable decision and may not be currently eligible but received some sort of retro award. I am concerned they are not being flagged by OTDA for SSP retro. Please let me know if you need any other information. Her living arrangement has always been living with others. She lives with her husband.

9

of this issue and the specific case circumstances for Rupa Dhakal, it has been determined that your client is not eligible for retroactive benefits," and explained that the OTDA "will not pay any retroactive SSP benefits "on behalf of an individual . . . who was not initially determined eligible for SSP benefits."[7] (Dkt. No. 1-11, at 2). Dhakal contends that because she was eligible for SSI from November 2013 to August 2016, she should have received SSP benefits "during those months." (Dkt. No. 1, ¶ 62).

Dhakal requested, and on February 13, 2018, received " a fair hearing to challenge the denial of SSP benefits." (Dkt. No. 1, ¶ 63). On March 27, 2018, the Commissioner's Designee reversed the SSP's determination that Dhakal was not eligible for retroactive benefits. (Dkt. No. 1-12, at 9). The Commissioner's Designee directed the SSP Agency to "reevaluate [Dhakal's] eligibility for SSP benefits by considering the determination made for the SSA that was eligible for SSI in those months," and "to provide [Dhakal] with SSP benefits for the period October 2014 through August 2016, taking into account any other income and her state living arrangement," and "to provide [Dhakal] written notice of its determination." (Dkt. No. 1-12, at

---

(Dkt. No. 1-11, at 2).

[7] The email from SSP stated, in relevant part:

> 18 NYCRR 398-4.2(a)(2) provides that, to be eligible for SSP benefits, an individual or couple must be in receipt of SSI benefits or be eligible to receive SSI benefits except by reason of income. Pursuant to section 398-4.3, the [OTDA] shall determine each individual's or couple's initial eligibility for SSP benefits on the basis of the data supplied by the federal SSA through the State Data Exchange (SOX). Section 398-11.3 provides that when any payment issued is less than the correct amount of SSP (or SSPNA) benefits, the Office will correct the underpayment to the individual or couple, except that no payment will be made to an individual or couple who is ineligible to receive SSP or SSPNA. Consequently, notwithstanding any prior period of eligibility for SSP benefits for which such benefits were not paid, [the OTDA] will not pay any retroactive SSP benefits on behalf of an individual or couple who was not initially determined eligible for SSP benefits by [the OTDA] upon the basis of the data supplied by the federal SSA through the SOX.

(Dkt. No. 1-11, at 2).

9). The Commissioner's Designee wrote that 18 N.Y.C.R.R. § 358-6.4 required immediate compliance "with the directives set forth above." (Dkt. No. 1-12, at 9). The fair hearing decision cover sheet states that Dhakal "has been advised to notify the [OTDA] if the [SSP] fails to comply with the decision within 10 days after receipt of the decision." (Dkt. No. 1-12, at 2).

On June 13, 2018, having received no notice from the SSP regarding its determination following the fair hearing decision, Dhakal's attorney called the Compliance Unit to complain that no action had been taken. (Dkt. No. 1, ¶ 67). In a letter dated June 14, 2018, a Compliance Coordinator acknowledged receipt of Dhakal's complaint of non-compliance and indicated that he would "review this matter with the [SSP] to insure that appropriate action is taken" and that Dhakal would "be contacted by this Office upon completion of compliance." (Dkt. No. 1-14, at 2). The coordinator further wrote that should Dhakal "have any questions" or "would like to discuss this case further," she could contact the OTDA at its 1-800 number. (Dkt. No. 1-14, at 2).

On June 21, 2018, Dhakal received a letter from the coordinator indicating that the OTDA had "received a report from the [SSP] regarding compliance with the . . . fair hearing decision," and that OTDA's "review of that report, the fair hearing decision and [Dhakal's] original complaint confirms that the [SSP] has taken appropriate action to comply with the directives" of the fair hearing decision. (Dkt. No. 1-13, at 2). The coordinator advised Dhakal that OTDA regarded "this matter satisfactorily resolved" and that her "compliance inquiry ha[d] been closed." The coordinator again provided OTDA's 1-800 number "[s]hould [she] have any questions" or if she "would like to discuss this case further." (Dkt. No. 1-13, at 2). "The letter did not describe the 'appropriate action' that had been taken." (Dkt. No. 1, ¶ 70). "Neither Ms. Dhakal nor her counsel have heard anything further from the SSP Unit and Ms. Dhakal has received no SSP benefits, to date." (Dkt. No. 1, ¶ 69).

11

Plaintiffs assert six Fourteenth Amendment procedural due process claims. They allege that Defendant maintained a policy, pattern and practice of: (1) failing to provide an adequate written notice of denial of SSP benefits that identifies the months for which the determination was made (First Cause of Action); (2) failing to ensure "that SSP benefits are provided to disabled individuals who have prevailed in an administrative hearing, and received a decision stating that determination of the SSP Unit to deny them SSP benefits was in error" (Second Cause of Action); (3) "disregarding administrative hearing decisions finding that the denial of SSP benefits was in error" and failing to ensure compliance with fair hearing decisions (Third Cause of Action); (4) "closing compliance complaints without ensuring that the actions directed in the" fair hearing decision were "in fact performed" (Fourth Cause of Action); (5) failing to "provide adequate notices to those who they denied SSP benefits" (Fifth Cause of Action); and (6) "making a determination that the SSP Unit has complied with a fair hearing decision without describing in writing the action that the SSP Unit has taken to support that conclusion," (Sixth Cause of Action). (Dkt. No. 1, ¶¶ 79–84). Plaintiffs seek declaratory and injunctive relief.

### III. STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. DISCUSSION

Defendant moves to dismiss the Complaint on the grounds that: (1) state post-deprivation remedies, namely, an Article 78 proceeding, are sufficient to protect Plaintiffs' procedural due process rights; and (2) the Court should abstain from considering Plaintiffs' claims, which implicate a complex state regulatory scheme, under the *Burford*[8] abstention doctrine.[9] (Dkt. No. 8-2, at 5–10).

### A. Availability of Article 78 Proceeding

Defendant argues that because an Article 78 proceeding in state court "could adequately address" Plaintiffs' claims and would "afford the Plaintiffs all the process to which they are due," they fail to state a procedural due process claim. (Dkt. No. 8-2, at 5–8 (citing N.Y. C.P.L.R. 7801)). Plaintiffs respond that they were not required to bring an Article 78 proceeding because they "do not allege that they were denied their benefits through the random and unauthorized act of a state employee," but that "Defendant's system itself . . . deprives them of their rights and therefore does not require resort to state court procedures." (Dkt. No. 14, at 9).

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York ("HANAC")*, 101 F.3d 877, 880 (2d Cir. 1996). "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so

---

[8] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

[9] Defendant has withdrawn his argument that this action should be stayed pending "the determination of Article 78 proceedings presently being litigated" by other individuals in state court, as those proceedings have been decided. (Dkt. No. 24).

13

long as it provides meaningful post-deprivation remedy." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006). The Second Circuit has "held on numerous occasions that an Article 78 proceeding is a perfectly adequate postdeprivation remedy" to address "a random, arbitrary deprivation of property or liberty." *HANAC*, 101 F.3d at 881, 882. But "where a due process violation is based on an established procedure rather than a random, unauthorized act, the availability of additional process in an Article 78 proceeding does not bar a due process claim but, rather, is a relevant factor in the *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976)] analysis." *Rothenberg v. Daus*, 481 F. App'x 667, 676 (2d Cir. 2012).

Here, Plaintiffs argue that "it is Defendant's system itself that deprives them of their rights," (Dkt. No. 14, at 9), and that the alleged due process violation is based on an established procedure, not a random, unauthorized act. Plaintiff Washington alleges that following the issuance of the fair hearing decision, in which the Commissioner's Designee found that the "Agency's determination that the Appellant was ineligible for retroactive [SSP benefits] . . . cannot be sustained," (Dkt. No. 1-7, at 10), the SSP nevertheless informed her that it was "unable to issue . . . retroactive SSP benefits" "due to New York State's SSP regulations"—citing the same regulations the Commissioner's trustee had found to be *inapplicable*. (*Id.*; *compare* Dkt. No. 1-7, at 7 (finding 18 N.Y.C.R.R. § 398-11.3, which governed SSP underpayments to be inapplicable to eligibility for retroactive SSP payments) *with* Dkt. No. 1-9, at 2 (finding it was unable, based on N.Y.C.R.R. § 398-11.3, to issue retroactive SSP payments)). Plaintiffs Hills and Dhakal received nearly identical denials. (Dkt. No. 1, ¶¶ 34–45, 59–70). It is therefore plausible to infer that Defendant's responses in this case were based on an agency-wide, established SSP procedures regarding retroactive payment rather than the result of random, unauthorized conduct. *Rivera-Powell*, 470 F.3d at 465 (explaining that "when the deprivation is pursuant to an

established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing" and that "[u]nder those circumstances, 'the availability of post-deprivation procedures will not, ipso facto, satisfy due process.'" (quoting *HANAC*, 101 F.3d at 880). Thus, the availability of an Article 78 proceeding does not "automatically satisfy due process," and the Court must consider "what process was due." *See id.* at 466 ("If . . . we were to find that the Board's decision was part of an established state procedure, such that the availability of a post-deprivation remedy would not automatically satisfy due process, we would merely go on to determine what process was due.").

To determine what process is due, courts must balance the three factors set forth in *Mathews*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. As Defendant does not otherwise challenge Plaintiffs' due process allegations, the Court does not analyze the sufficiency of process under the remaining *Mathews* factors. Accordingly, Defendant's motion to dismiss based on the availability of an Article 78 proceeding is denied.

### B. *Burford* Abstention

Defendant contends that the because Plaintiffs' claims "require the adjudication of disputes arising from a state regulatory scheme and implicating an important state policy," the "Complaint should be dismissed pursuant to the doctrine of *Burford* abstention." (Dkt. No. 8-2, at 8). Plaintiffs oppose Defendant's motion. (Dkt. No. 14, at 14–15).

In *New Orleans Public Service, Inc. v. Council of New Orleans*, the Supreme Court explained the *Burford* abstention doctrine as follows:

15

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

491 U.S. 350, 361 (1989) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, (1976)). However, "[a]bstention is the exception, exercise of jurisdiction the rule." *United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 593 (2d Cir. 1989). Further, the Supreme Court has "described the federal courts' obligation to adjudicate claims within their jurisdiction as 'virtually unflagging.'" *New Orleans Pub. Serv., Inc.*, 491 U.S. at 359 (quoting *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988)).

The Second Circuit has "identified three factors to consider in connection with the determination of whether federal court review would work a disruption of a state's purpose to establish a coherent public policy on a matter involving substantial concern to the public," specifically: "'(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern.'" *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009) (quoting *Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir. 1998)). Defendants argue that "at least the first and third *Burford* factors militate in favor of abstention." (Dkt. No. 8-2, at 10). The Court considers each factor below.

### 1. Specificity of State Regulatory Scheme

Defendant argues that the state regulatory scheme at issue is "comprehensive" and "a web of entirely state-promulgated regulations that address, among other things, state determinations of SSP eligibility" as well as "the procedural rules for challenging such a

determination, and the mechanisms for compliance enforcement." (Dkt. No. 8-2, at 10). New York established the SSP "to provide additional payments to supplement the basic Federal SSI payment," 18 N.Y.C.R.R. § 398-1.1, and enacted a regulatory scheme governing the eligibility requirements for SSP benefits, 18 N.Y.C.R.R. § 398-4.2, assigning eligibility determination to the OTDA, 18 N.Y.C.R.R. § 398-4.3, setting benefit levels, 18 N.Y.C.R.R. § 398-4.4, specifying notice requirements, 18 N.Y.C.R.R. § 398-8.1, and providing a system of administrative review and appeal, including a fair hearing process governed by New York Social Services Law § 22. 18 N.Y.C.R.R. § 398-10.1; N.Y. Soc. Serv. Law § 22. The Court concludes that Defendant has shown that the SSP regulatory scheme is highly specific. *Cf. Canaday v. Koch*, 608 F. Supp. 1460, 1470 (S.D.N.Y. 1985) (observing, in the emergency housing context, that the "state has constructed a complex system of administrative review and appeal," via New York Social Services Law § 22).

This does not, however, end the inquiry because, this "factor focuses more on the extent to which the federal claim requires the federal court to *meddle* in a complex state scheme." *Hachamovitch*, 159 F.3d at 697. Here, Plaintiffs complain that Defendant: (1) failed to provide adequate written notice of denial of benefits (First and Fifth Causes of Action); (2) failed to "assure that SSP benefits are provided to disabled individuals who have prevailed in an administrative hearing" (Second Cause of Action); (3) failed to ensure the SSP complies with the OTDA's fair hearing decisions (Third Cause of Action); (4) failed to ensure the actions directed in the fair hearing decision "are in fact performed" (Fourth Cause of Action); and determined that the SSP complied with a fair hearing decision "without describing in writing the action that the SSP Unit has taken to support that conclusion" (Sixth Cause of Action). (Dkt. No. 1). Thus, the Court need only determine whether the process Plaintiffs received comported with federal

procedural due process requirements, which may be done without meddling in the state regulations or passing on the propriety of the outcome of Plaintiffs' application for SSP benefits.[10] Thus, this factor does not favor abstention. *See Hachamovitch*, 159 F.3d at 697 ("Because Dr. Hachamovitch's due process complaint concerns the absence of a provision for reopening of a proceeding rather than the considerations, values and procedures that should shape its outcome, this . . . factor probably does not favor abstention."); *see also Toyota Lease Tr. v. A-1 Grand Autobody, Inc.*, No. 18-cv-3098, 2019 WL 2571154, at *3, 2019 U.S. Dist. LEXIS 103574, at *7 (E.D.N.Y. June 20, 2019) (concluding that the first factor weighed against abstention where the plaintiff's claims pertained "to whether the lien levied on its vehicle, deprived Plaintiff of a property interest without notice or an opportunity to be heard," explaining that, "[a]s alleged in the Complaint, these claims relate to the constitutionality of Defendants' conduct and thus there is no state law inquiry or analysis embedded within that claim.").

### 2. Interpretation of State Statute

The second factor, "the necessity of discretionary interpretation of state statutes," *Bethphage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239, 1243 (2d Cir. 1992), does not weigh in favor of abstention. Defendant argues that this "factor weighs toward abstention because Plaintiffs' claims raise issues of Defendants' interpretation of statute statutes and regulations related to the SSP program," (Dkt. No. 18, at 5), but has not identified which, if any, state

---

[10] Plaintiffs seek injunctive relief in the form of an order directing Defendant to, among other things, "provide to all named plaintiffs and members of the class those SSP benefits that were withheld or denied as a result of the improper actions of the Defendant" and "[d]evelop and implement an administrative fair hearing compliance process that complies with Due Process of Law in all respects." (Dkt. No. 1, at 20–21). Plaintiffs have updated the Court with recent New York State Supreme Court rulings in Article 78 proceedings which, according to Plaintiffs, "clearly articulate a legal entitlement to SSP benefits" in cases such as this. (Dkt. No. 23). As Defendant has not addressed the relief Plaintiff seeks, the Court does not address it here but notes that to the extent Plaintiffs seek review of the merits of the SSP determination or a reversal of it, reconsideration of the *Burford* abstention doctrine may be necessary to ensure the Court does not "interfere with the proceedings or orders of state administrative agencies." *New Orleans Pub. Serv., Inc.*, 491 U.S. at 361. Further, the Complaint advances no legal authority for a federal district court's oversight of the development of a state administrative fair hearing process.

statutes or regulations the Court will need to construe in order to resolve Plaintiffs' due process claim. Plaintiffs contend that the post-fair hearing process "is defective and does not comport with established requirements of due process." (Dkt. No. 14, at 15). The Court may examine the post-hearing process and the notices Defendant issued in order to evaluate Plaintiffs' federal due process claims. There is, therefore, no "need to give one or another debatable construction to a state statute." *Hachamovitch*, 159 F.3d at 697. *See also Bethphage*, 965 F.2d at 1243 ("[T]he aim of *Burford* abstention is to avoid resolving difficult state law issues involving important public policies or avoid interfering with state efforts to maintain a coherent policy in an area of comprehensive regulation or administration." (internal citation omitted)); *Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1308 (2d Cir. 1990) ("The fact that here *only* a federal claim was present raises the level of justification [needed for abstention] even more.").

### 3. State Concern

There is no question that the subject-matter of this litigation—the "processes surrounding State-funded, State-administered benefit programs," (Dkt. No. 8-2, at 10), is "traditionally one of state concern" or that the issuance of SSP benefits is of "paramount importance" to the state. *Hachamovitch*, 159 F.3d at 698. *See also Bethphage*, 965 F.2d at 1244 (concluding "the subject matter of this case—reimbursement rates under the Medicaid Act—is an area of legitimate state interest," noting that "the Medicaid Act itself requires the creation of a state administrative framework to establish methods and procedures for the procurement of and payment for care and services consistent with efficiency, economy, and quality of care" signaling Congress' recognition "that the establishment and review of reimbursement rates is a legitimate state concern"). This factor therefore weighs in favor of abstention

Having considered the relevant factors, the Court concludes that, on balance, they weigh against abstention and that this is not the "extraordinary case[]" that requires abstention.

19

*Hachamovitch*, 159 F.3d at 693. The administration of the SSP and the provision of benefits are matters of legitimate concern to the state, but "there is little or no discretion to abstain in a case which does not meet traditional abstention requirements." *Bethphage*, 965 F.2d at 1245 (2d Cir. 1992) (quoting *Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534, 540 (9th Cir. 1985)). And in this case, it does not appear that interference with the state's administrative scheme or the interpretation of any regulatory provisions is embedded in the determination of whether due process was satisfied—a determination "[t]he federal courts are well-placed to undertake." *Hachamovitch*, 159 F.3d at 698. *See also Orozco by Arroyo v. Sobol*, 703 F. Supp. 1113, 1120 (S.D.N.Y. 1989) (citing *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 601 (2d Cir. 1988) (holding *Burford* abstention unwarranted in case involving due process attack on State's medical malpractice insurance scheme)). Accordingly, Defendant's motion to dismiss based on *Burford* abstention, is denied. *See New Orleans Pub. Serv., Inc.*, 491 U.S. at 362 ("While *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." (quoting *Colorado River*, 424 U.S. at 815–16)).

## V. CONCLUSION

For these reasons, it is

**ORDERED** that Defendant's motion to dismiss, (Dkt. No. 8), is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 20, 2019
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

20